JAHANGIR MALEKZAD AND JILA MALEKZAD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21285–80.     Filed June 9, 1981.

*William G. Morschauser*, for the petitioners.
*Michael C. Cohen*, for the respondent.

## OPINION

PARKER, *Judge*: This matter comes before the Court on respondent's motion to dismiss for lack of jurisdiction on the

ground that the petition was not timely filed within the 90-day period prescribed by sections 6213(a) and 7502.[1] Petitioners contend that their petition was timely filed within the 90-day period under those sections. Alternatively, petitioners assert that they were entitled to the 150-day period allowed for persons outside the United States, because they were away on a weekend trip to Mexico at the time the statutory notice was delivered to their home.

On August 19, 1980, respondent mailed a statutory notice of deficiency by certified mail to petitioners at their last known address, 9472 Rembert Lane, Beverly Hills, Calif. 90210. A copy of that statutory notice was also sent to petitioners' counsel. On Saturday, August 23, 1980, the notice of deficiency was delivered by the U.S. Postal Service to petitioners' home. At the time of delivery, petitioners were not at home, and another resident of petitioners' household signed for the document.[2] Petitioners had left their home early that Saturday morning for a weekend trip to Mexico. They returned from Mexico the next day, arriving home late Sunday night, and actually received the statutory notice at that time.

Monday, November 17, 1980, was the 90th day after the mailing of the statutory notice of deficiency, and that day was not a legal holiday in the District of Columbia. The petition in this case was received and filed at the Tax Court on November 24, 1980, which date was 97 days after the mailing of the statutory notice.

The envelope in which the petition was mailed to the Court

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year involved in this case, unless otherwise stated.

[2] The identity of that person has not been established, and it may well have been petitioner Jila Malekzad. The petition in this case asserted that the statutory notice "was received by the petitioner on August 23, 1980." Since the petition throughout used the term "petitioner" interchangeably with the term "petitioners," without explanation as to the identity of the person intended, it may well have been the wife who received the statutory notice on Saturday, Aug. 23, 1980. It is not clear whether both spouses or just petitioner Jahangir Malekzad took the weekend trip to Mexico. Petitioners' memorandum of points and authorities uses only the term "petitioner," even in the caption of the case, and speaks only of "he" and "his." For purposes of the arguments in regard to the 150-day period, however, it probably is irrelevant and immaterial whether or not Mrs. Malekzad received the statutory notice and whether or not one or both spouses went to Mexico. See *Camous v. Commissioner*, 67 T.C. 721 (1977). For convenience, the Court will assume that both spouses went to Mexico and were not at home when the statutory notice was delivered. The Court will also assume that the person who signed for the statutory notice was authorized to do so, since neither party has suggested otherwise.

was not torn or damaged in any way when it was received at the Court. However, the upper right-hand corner of the mailing label (bearing the typed address of the Tax Court and the printed return address of petitioners' counsel) on that envelope had been folded or diagonally creased and then straightened back into the proper position, with two pieces of clear Scotch tape affixed to the top edge and along the right edge of that mailing label. The two pieces of clear Scotch tape were not on the envelope when it left the office of petitioners' counsel. The record does not show when or by whom the Scotch tape was affixed to the envelope and mailing label. Whatever may have happened to the mailing label during the envelope's journey to the Tax Court, there is no indication that it resulted in any delay in delivery to the Court.

The envelope in which the petition was mailed to the Court bore a private postage meter mark for Riverside, Calif., dated November 14, 1980, which date was 87 days after the mailing of the statutory notice. That envelope also bore a U.S. Postal Service postmark for La Mirada, Calif., dated November 21, 1980. The date of November 21, 1980, was 94 days after the mailing of the statutory notice. The petition was received at the Tax Court on November 24, 1980, 97 days after the mailing of the statutory notice.

Under section 6212(a),[3] respondent is authorized, upon determining a deficiency in Federal income tax, to send a notice of deficiency to the taxpayer by certified mail or registered mail. Under section 6213(a),[4] the taxpayer, in turn, is given 90 days (or 150 days if the notice is addressed to a person outside the United States) after the notice of deficiency is mailed to him within which to file a petition with this Court. That 90-day (or 150-day) period is jurisdictional, and we must dismiss the petition for lack

---

[3]SEC. 6212. NOTICE OF DEFICIENCY.

(a) IN GENERAL.—If the Secretary determines that there is a deficiency in respect of any tax * * * , he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

[4]SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.

(a) TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT.—Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. * * *

of jurisdiction if it is not timely filed. *Estate of Cerrito v. Commissioner*, 73 T.C. 896, 898 (1980); *Estate of Moffat v. Commissioner*, 46 T.C. 499 (1966).

The envelope containing the petition in this case was received at the Tax Court on the 97th day after the mailing of the statutory notice of deficiency. Petitioners argue that it was nonetheless timely, relying upon section 7502[5] under which timely mailing can be treated as timely filing if certain conditions are met. However, to come within the terms of section 7502, the petition must have been timely mailed on or before the last date for filing. Petitioners say that the petition was timely mailed on the date shown by the private postage meter mark, which date was the 87th day after the mailing of the statutory notice of deficiency. However, in addition to that private postage meter mark, the envelope also bore a postmark made by the U.S. Postal Service.

The first issue to be decided is which postmark is controlling. As to nonofficial postmarks, section 7502(b) simply provides that the timely mailing as timely filing provisions "shall apply in the case of postmarks *not* made by the United States Postal Service *only if and to the extent provided by regulations* prescribed by the

---

[5]SEC. 7502. TIMELY MAILING TREATED AS TIMELY FILING AND PAYING.

(a) GENERAL RULE.—

(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

(2) MAILING REQUIREMENTS.—This subsection shall apply only if—

(A) the postmark date falls within the prescribed period or on or before the prescribed date—

(i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or

(ii) for making the payment (including any extension granted for making such payment), and

(B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

(b) POSTMARKS.—This section shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary.

Secretary." (Emphasis added.) This delegation of rule-making power is both broad and unequivocal. Section 301.7502–1(c)(1)(iii)(*b*), Proced. & Admin. Regs., in pertinent part, provides that:

If the envelope has a postmark made by the United States Post Office in addition to the postmark not so made, the postmark which was not made by the United States Post Office shall be disregarded, and whether the envelope was mailed in accordance with this subdivision shall be determined solely by applying the rule [applicable to postmarks made by the Postal Service].

These regulations are legislative in nature and are not inconsistent with the statute nor an arbitrary or unreasonable means of carrying out the legislative purpose. Therefore, we uphold the regulations making the U.S. Postal Service postmark the controlling one.[6] We conclude that here the private postage meter mark must be disregarded, and the postmark made by the Postal Service is the controlling one in this case.

That brings us to the rule applicable to envelopes or mailing covers bearing a U.S. Postal Service postmark. Section 301.7502–1(c)(1)(iii)(*a*), Proced. & Admin. Regs., provides that:

If the postmark on the envelope or wrapper is made by the United States Post Office, such postmark must bear a date on or before the last date, or the last day of the period, prescribed for filing the document. If the postmark does not bear a date on or before the last date, or the last day of the period, prescribed for filing the document, the document will be considered not to be filed timely, regardless of when the document is deposited in the mail. *Accordingly, the sender who relies upon the applicability of section 7502 assumes the risk that the postmark will bear a date on or before the last date,* or the last day of the period, prescribed for filing the document, but see subparagraph (2) of this paragraph with respect to the use of registered mail or certified mail to avoid this risk. * * * [Emphasis added.]

Since the U.S. Postal Service postmark here was dated beyond the 90th day, petitioners cannot rely upon the timely mailing as timely filing provisions to bring themselves within the 90-day period. Here, as in other cases where the U. S. Postal Service postmark is dated beyond the last date for filing the petition, petitioners are precluded from introducing extrinsic evidence to show that the petition was in fact mailed earlier. *Shipley v. Commissioner*, 572 F.2d 212, 214 (9th Cir. 1977), affg. a Memorandum Opinion of this Court; *Drake v. Commissioner*, 554

---

[6]See also *Pete James Enterprises, Inc. v. Commissioner*, T.C. Memo. 1978–243.

F.2d 736 (5th Cir. 1977), affg. an unreported Tax Court order; *Boccuto v. Commissioner*, 277 F.2d 549 (3d Cir. 1960); *Estate of McGarity v. Commissioner*, 72 T.C. 253 (1979); *Sylvan v. Commissioner*, 65 T.C. 548, 552 (1975). The presence of a Postal Service postmark and the date of such postmark are legally conclusive, and petitioners cannot go behind that fact.

In a final attempt to go behind the date on the Postal Service postmark, petitioners argue that their situation is controlled by *Perry Segura & Associates, Inc. v. Commissioner*, T.C. Memo. 1975–80. That case is distinguishable on its facts. In *Perry Segura,* the original envelope or mailing wrapper had been completely destroyed at some point in the mailing process and the Postal Service had rewrapped the petition in an official business envelope of the Postal Service without any postmark. In that case, the Court permitted the taxpayer to introduce extrinsic evidence to show timely mailing. The Court held that the risk the taxpayer assumed by using the mails was that the envelope would not be postmarked before the 90th day, and not the risk that the postmarked envelope in which the petition was mailed would be destroyed in transit. Here, the original envelope was not torn or damaged in any way although someone at some point had placed two pieces of clear tape on the corners of the mailing label. The original envelope bearing the original private postage meter stamp arrived at the Tax Court. However, that original envelope also bore a U.S. Postal Service postmark. Under the regulations and case law, it is the official Postal Service postmark that is controlling and it was not dated within the 90-day period.

Petitioners next argue that in any event they are entitled to a period of 150 days within which to file their petition. They rely on the language in section 6213(a) which provides that:

Within 90 days, *or 150 days if the notice is addressed to a person outside the United States,* after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. * * * [Emphasis added.]

Whether the statutory period is 90 days or 150 days, the time runs from the date of the mailing of the statutory notice. The statute does not require any type of personal service on the taxpayer and the date of receipt is not determinative. Petitioners argue, however, that date of receipt does govern in determin-

ing whether a taxpayer is entitled to the 90-day period or the 150-day period. Respondent takes the position that we must look only to the date of mailing of the statutory notice even for this purpose.

In this case, petitioners were in the United States on the date that the statutory notice was mailed to them, but they were outside the United States briefly at the time the notice was received at their home. The statutory notice was mailed to petitioners at their proper address in Beverly Hills, Calif., on August 19, 1980. There is no contention that petitioners were outside the United States on that date. The statutory notice arrived at petitioners' home in Beverly Hills on Saturday, August 23, 1980. Early that Saturday morning before the mail arrived, petitioners left for a weekend trip to Mexico. See note 2. Petitioners returned to their home late Sunday night and actually received the statutory notice at that time.

Section 6213(a) allows the 150-day period when the notice is "addressed to a person outside the United States."[7] While the period, whether 90 days or 150 days, runs from the date of mailing of the statutory notice, the statute does not say that the determination of whether the 90-day period or the 150-day period applies depends upon the geographical location of the taxpayer at the exact time the statutory notice is mailed. Petitioners, looking to the date of receipt of the statutory notice, argue that they are entitled to the 150-day period. The statute also does not say that the applicability of the 150-day period depends upon the taxpayer's geographical location at the exact time the statutory notice is delivered by the Postal Service to the taxpayer's home.

If the choice here were either date of mailing or date of receipt and nothing more, the Court would select date of mailing since that is the only date referred to in section 6213(a). In determining the applicability of the 150-day period as opposed to the 90-day period, however, the Court has chosen to look at both

[7]It has long been held that the phrase "outside the United States" normally refers to the person and not just the address, but it can, in an appropriate case, refer to the address, where the taxpayer happens to be in the United States but the address is outside the United States. *Looper v. Commissioner*, 73 T.C. 690 (1980). The important thing is that there be some substantial delay in receipt of the statutory notice so that the taxpayer has an inadequate period of time within which to file his petition in the Tax Court and so that the statutory notice does not serve the notice function it is intended to serve.

the date of mailing of the statutory notice and the date it was finally received by the taxpayer. In so doing, the critical inquiry in each instance has been whether or not the taxpayer fell within the class of persons the Congress intended to have the benefit of the longer period and whether or not the statutory notice served the notice function it was intended to serve.

In *Cowan v. Commissioner*, 54 T.C. 647 (1970), the parties addressed their attention to the date of mailing of the statutory notice. On the date the notice was mailed, the taxpayer was outside the United States on a 1-day trip to Mexico from about 9 a.m. to 7:30 or 8 p.m. that evening. The Court found that that brief absence did not bring the taxpayer within the definition of a "person outside the United States." While the 150-day period can be applied even where the absence from the country is a temporary one as opposed to permanent residence abroad, the ephemeral absence in the *Cowan* case was not sufficient. Moreover, as a practical matter, the brief absence for part of the day on the date of mailing could not have resulted in any delay in receipt of the statutory notice and would not entitle the taxpayer to the longer 150-day period. By the same token, a mere ephemeral presence in the United States on the date of mailing of the statutory notice also will not necessarily deprive a taxpayer of the benefits of the 150-day period, if there is in fact some resulting delay to the taxpayer. *Lewy v. Commissioner*, 68 T.C. 779 (1977); *Levy v. Commissioner*, 76 T.C. 228 (1981).

In *Lewy v. Commissioner, supra,* the taxpayer was an attorney with offices in New York and Paris, was briefly in the United States on the day the statutory notice was mailed, but left the very next day for an extended stay abroad. The Court ignored the taxpayer's ephemeral presence in the United States on the date of mailing. There was in fact a lengthy delay, from November 11, 1976 (date of mailing), to February 1, 1977, before the taxpayer actually received and had knowledge of the statutory notice. The Court rejected a mechanical reading of the statute, looked at the purpose for which the longer filing period had been created, and allowed him the 150 days. 68 T.C. at 783.

The Court reached a similar result in *Levy v. Commissioner, supra,* on a comparable but not quite as appealing fact situation. There, the taxpayer was in the United States for part of the day on which the statutory notice was mailed but left that day for a vacation in Jamaica. The Court again ignored the taxpayer's

ephemeral presence in the United States on the date of mailing, found delay in receipt of the statutory notice, and held the 150-day period applicable. That was a very close case. There was at most a 4-day delay. The statutory notice was mailed on June 14, 1979, delivered to the taxpayer's home on June 15, 1979, and received by petitioners on their return from their vacation on June 19, 1979. In any event, the holding in the *Levy* case should not be extended to cover the facts of the present case.

Here, the taxpayers were in the United States on the date the statutory notice was mailed and for several days thereafter. Their only absence from the United States was an ephemeral one, a weekend trip to Mexico from early Saturday morning until late Sunday night, about a day and a half. The statutory notice happened to be delivered to their home that same Saturday, after they had left for their weekend trip. Had the statutory notice been delivered 2 days later on Monday, not an unusual period for mail delivery, or had petitioners taken their weekend trip north to some spot in California rather than south to Mexico, there would be no claim of entitlement to the 150-day period. Moreover, had petitioners taken a lengthy vacation in Hawaii, they would have been much farther away from home but still not "outside the United States."

Under any practical test, there was no delay in this case. The statutory notice was received at petitioners' home on a Saturday. Another resident of petitioners' household signed for, and accepted delivery of, the statutory notice, and it was awaiting petitioners when they returned home the very next day. Even if petitioners had been at home to receive the statutory notice on Saturday, it is unlikely they would have taken any action on the matter before Monday. The record also indicates that a copy of the notice was sent to petitioners' counsel. If their counsel was in his office that Saturday, he should have received the statutory notice; and if he was not in his office, petitioners probably could not have contacted him even if they had physically received the notice that Saturday.

Since there is no question that petitioners had received the statutory notice by late evening of August 24, they had at least 84 days of the 90-day period within which to file their petition with this Court. This is more time than many taxpayers have just as a result of normal delays in delivery of the mails. See *Blankenship v. Commissioner*, 647 F.2d 169 (9th Cir. 1981), a per

curiam opinion affirming a Memorandum Opinion of this Court, holding that despite a delay of 8 to 16 days from the mailing to petitioners' receipt of the notice, there was no prejudicial delay and 74 days was ample time to file a petition. Any appeal in this case would lie to that circuit.

Entitlement to the longer 150-day period should not depend on the happenstance of a brief absence from the United States on the date of delivery of the statutory notice. Since another resident of petitioners' household signed for and accepted delivery of the statutory notice and since petitioners received it the very next day, we conclude that this case does not come within the statutory language of persons "outside the United States." *Cowan v. Commissioner, supra*; cf. *Looper v. Commissioner*, 73 T.C. 690 (1980).

Respondent's motion to dismiss will be granted.

*An appropriate order will be issued.*